Filed 6/9/25  Kirkeby v. Kahn CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GLENN KIRKEBY et al., Plaintiffs and Respondents, v. ANNE KAHN et al., Defendants and Appellants. | D083388 (Super. Ct. No. 37-2017-00032731-CU-BT-NC) |


APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Decker Law, James Decker, and Griffin Schindler for Defendant and Appellant.

Law Offices of Robert A. Ball, Robert A. Ball, and John M. Donnelly for Plaintiffs and Respondents.


In this appeal, her third from the underlying lawsuit, Anne Kahn and an entity controlled solely by her, Anne Kahn, Inc. (Kahn, Inc.), challenge the trial court's order distributing $1,578,111 to Glenn and Anastasia Kirkeby in partial satisfaction of a judgment in their favor against their former business

partner and Kahn's ex-husband, Lawrence Burns. Burns defrauded the Kirkebys out of millions of dollars and the Kirkebys obtained a judgment against him for $9,111,648. The funds that were distributed were proceeds from the sale of property that Burns, using a limited liability company later adjudged his alter ego, purchased with money embezzled from the Kirkebys.

On appeal from the distribution order, Kahn contends reversal is required because the judgment against Burns is void under Code of Civil Procedure section 580.[1] Alternatively, Kahn argues the order must be reversed because the property was formerly owned by an entity controlled by Burns, and not Burns himself; the property was awarded to Kahn under her marital settlement agreement with Burns; and the Kirkebys did not, as the trial court determined, have a valid lien on the property. Kahn further asks this court to "order restitution to [her] of any funds received by the Kirkebys" from the proceeds of the property sale. As we explain, we reject Kahn's claim that the judgment is void. Further, we hold the trial court's decision to distribute the funds to the Kirkebys was otherwise proper. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Initial Litigation & Stipulated Injunctions*

The Kirkebys filed suit against Burns in 2017, alleging he defrauded them and embezzled from their business. The lawsuit was also filed derivatively on behalf of MHCD, LLC, an entity jointly owned by the

---

[1]    Further statutory references are to the Code of Civil Procedure.

[2]    Additional facts concerning the underlying dispute are set forth in our earlier opinions deciding Kahn's prior two appeals in this case. (See *Kirkeby v. Kahn* (Sept. 17, 2024, D082333) [nonpub. opn.] and *Kirkeby v. The Crosby Clinic, LLC* (January 13, 2025, D083640 [nonpub. opn.].)

2

Kirkebys and Burns. In January 2018, the Kirkebys filed their First Amended Complaint (FAC) against Burns and various other entities alleged to be controlled by Burns, including NSI Services LLC (NSI), which the FAC referred to as the "Crosby Center Entities."[3]

The FAC alleged the Kirkebys started a drug and alcohol abuse rehabilitation facility in 2002 shortly after meeting Burns. Burns claimed to be a licensed attorney and experienced business manager, who would help them operate the business. The FAC alleged that, unbeknownst to the Kirkebys, Burns misappropriated funds, assets, business opportunities, and real estate (including the property underlying this appeal) through his management of the rehabilitation center, known as the Crosby Center. In 2014, the Kirkebys discovered Burns was embezzling the business's assets and contacted the Federal Bureau of Investigation.[4] The complaint also alleged Burns and the Crosby Center Entities were each other's alter egos, and specifically that NSI was used as a shell to defraud the Kirkebys and MHCD.

In October 2019, MHCD filed a cross-complaint, which alleged similar claims against Burns, Kahn, and the same Crosby Center Entities. In addition, the complaint contained a cause of action for quiet title, asserting

---

[3] The complaint named as the other entity defendants: The Crosby Clinic, LLC; Interlawus, LLC; AAE Alcohol Rehab Service Center; AAE Crosby Center; AAE Women Eating Disorder Center; Dream Catcher Detox Center, Inc.; KBY Properties, LLC; Crosby Recovery Foundation; AAA National Credit Reporting, Corp.; Internet Creative Marketing, Inc.; Stonegate Investment Group, LLC; Applied Psychology Systems, LLC; The Neuroscience Institute; and L Burns Research Institute.

[4] The Kirkebys assert in their brief that Burns and Kahn are each facing over 40 felony criminal charges in a case pending in San Diego Superior Court.

that Burns and the Crosby Center Entities' concealment, misappropriation, and diversion of MHCD's assets resulted in the defendants wrongfully obtaining title to two properties in Escondido, one located on Camino De Las Lomas (the Camino Property) and one located on Circle R Way (Circle R Property). MHCD sought adjudication of its ownership rights in the properties, and to quiet title in the two properties in its favor. At the same time, MHCD filed notices of pendency of action with the San Diego County recorder for the properties.[5]

On December 10, 2019, MHCD, Burns, several entities controlled by Burns that were named parties in the litigation, including NSI, and Kahn entered into a stipulation for each property that enjoined its transfer. Under the stipulations, the parties "agree[d] not to, and [were] enjoined from, encumbering, impairing, selling, transferring, conveying, or otherwise assigning the real estate and improvements ... during the pendency of this lawsuit." In addition, the stipulations permitted the Crosby Clinic and NSI to seek refinancing of the Circle R Property, which faced foreclosure. MHCD agreed to dismiss its quiet title claim without prejudice and release the notices of pendency filed for each property to allow for the refinancing of the Circle R Property using the Camino Property as collateral. The stipulations were signed into orders by the trial court on December 17, 2019.

B. *Violations of the Stipulated Injunctions & Receivership*

Despite the stipulated injunction orders precluding transfer or encumbrance of the properties, on November 3, 2020, Burns encumbered the Camino Property with a deed of trust in the amount of $200,000. A little over

---

[5] Also in October, the trial court struck the answers to the FAC of many of the entity defendants, including NSI, for failure to retain counsel, and entered defaults against them.

4

a month later, on December 14, 2020, Burns conveyed title in the Camino Property from the Crosby Clinic to "Larry Burns Trustee of the Xanadau Dominican Irrevocable Trust – 2020" and conveyed title in the Circle R Property from NSI to "Larry Burns Trustee of the Xanadau Dominican Irrevocable Trust – 2020." This prompted the Kirkebys, on March 1, 2021, to record the stipulated injunction orders on the Camino and Circle R Properties with the county recorder.

The following month, Kahn, Inc. filed a complaint against Burns in San Diego County Superior Court, *Anne Kahn, Inc. v. Burns*, Case No. 37-2021-0001811-CU-BC-NC. Kahn, Inc. alleged it "was in possession and control" of the Circle R Property. Specifically, that an entity called Health Care Investments, Inc. transferred the property by grant deed to NSI on February 4, 2019, and that on April 4, 2019, NSI and Kahn, Inc. "entered into an implied-in fact contract granting Kahn, Inc. the exclusive right to operate" the Circle R Property. Kahn, Inc. further alleged it "invested more than $1,500,000 into the" Circle R Property. The complaint also alleged that the Crosby Clinic transferred ownership of the Camino Property to Kahn, Inc. via grant deed on October 7, 2020. Kahn, Inc. asserted claims against Burns for breach of contract, unjust enrichment, declaratory and injunctive relief, equitable indemnity, and quiet title.

On November 3, 2021, the Kirkebys filed an application for an order to show cause asserting Burns had violated the court's stipulated injunction orders concerning the two properties by transferring and encumbering the Camino Property with a $200,000 mortgage and by transferring the Circle R Property. After issuing an order to show cause, the court granted the application and found Burns in contempt for violating the terms of the stipulated orders. On December 13, 2021, the Kirkebys filed a joint motion

5

for an injunction or, alternatively, the appointment of a receiver to preserve the value of the Circle R Property to satisfy any future judgment. The motion alleged the property was in imminent danger of foreclosure and had been extensively damaged by squatters. On December 28, 2021, the court issued an order granting the motion, and appointed a receiver with authority to sell the Circle R Property.

On January 31, 2022, Kahn filed an ex parte application requesting to dissolve the lis pendens filed by the Kirkebys and seeking to stay the order appointing a receiver. Kahn argued that she was a significant investor in the properties and that the lis pendens on the properties were improper. The court denied the application on February 2, 2022. A little over two weeks later, however, Kahn, Inc. recorded its own lis pendens on the properties based on its pending lawsuit, *Anne Kahn, Inc. v. Burns*, Case No. 37-2021-0001811-CU-BC-NC. In March 2022, the Kirkebys' counsel made three requests to Kahn, Inc. to remove the notices of pendency on the two properties. The Kirkebys asserted the notices violated the stipulated injunction orders and that Kahn, Inc. had made material misrepresentations about its ownership of the properties in its complaint against Burns.

Kahn did not respond to the requests and instead, on March 16, 2022, filed an ex parte application to postpone a pending foreclosure sale of the Circle R Property and to remove the receiver. Kahn stated in the application that she formed Kahn, Inc. to formalize an agreement with Burns to operate the Circle R Property as a hotel, and that on October 17, 2019, NSI and Kahn, Inc. entered into a lease agreement. A copy of the purported lease was attached to the ex parte application.

On March 29, 2022, the Kirkebys filed an ex parte application for an order to show cause asserting Kahn was in contempt of the stipulated orders

6

based on her recording of notices of pendency on the two properties.  On April 4, 2022, the court denied Kahn, Inc.'s ex parte application, and postponed a hearing on the Kirkebys' application to permit Kahn to provide proof of removal of her notices of pendency.

C. *Sanctions Against Burns*

While the proceedings involving Kahn were moving forward, the Kirkebys were also pursuing their remedies against Burns.  After he failed to reconvey the Camino Property back to the Crosby Clinic in violation of the trial court's January 14, 2022 order, on March 3, 2022, the Kirkebys and MHCD jointly moved for terminating sanctions against Burns and the Crosby Clinic.  The Kirkebys also moved for terminating sanctions based on Burns failure to respond to their discovery requests.

On May 2, 2022, the trial court granted the motions, issuing terminating sanctions against Burns "based on his disobedience of the court's 1/14/22 order as to … reconveyance of the property." and Burns's "repeated violations of orders."  The court struck Burn's answers to the FAC and MHCD's cross-complaint, deemed all the matters alleged in the FAC and cross-complaint admitted, and entered defaults against Burns in favor of the Kirkebys and MHCD.  In addition, the trial court deemed all of the allegations against NSI and the Crosby Clinic (as well as the other entities controlled by Burns) admitted.

D. *Sale of the Circle R Property & Kahn's Attempts to Intervene*

Days later, on May 5, 2022, Kahn, Inc. filed an ex parte application seeking to intervene in the underlying proceedings.  Kahn, Inc. asserted it had leased the Circle R Property from NSI through December 31, 2026 and that the lease agreement also gave Kahn, Inc. a purchase option.  Kahn, Inc. also asserted it had been notified by the court-appointed receiver that he was

7

selling the Circle R Property and, therefore, intervention was required to prevent the sale and preserve Kahn, Inc.'s interest in the property. On May 9, 2022, the trial court set the matter for a hearing on July 8, 2022.

On July 6, 2022, the court granted the receiver's motion to approve the sale of the Circle R Property for $4.2 million. The court also authorized payment for services to the receiver and his counsel, as well as payment of accrued property taxes and a water lien on the property. In addition, in its order the court stated it had considered the arguments asserted by Kahn, Inc. in its ex parte application to intervene in the matter and explained in detail its reasons for rejecting the arguments. Specifically, the court found that contrary to Kahn, Inc.'s assertions, Kahn had been provided with notice of the receivership and that the receiver had been properly appointed by the court. The court rejected Kahn's assertion that she had a marital interest in the property, noting that NSI purchased the property just four days after Kahn and Burns were married, and that it was undisputed that the Circle R Property was "owned by NSI, Kahn is not a member of NSI and Kahn is not on title."

Further, the court noted that Kahn admitted that Kahn, Inc. had not entered into a written lease with NSI (despite Kahn, Inc.'s submission of a purported written lease agreement), and instead that Kahn, "Inc. had only an 'implied-in-fact' oral lease." The court further rejected Kahn, Inc.'s claim that it had an interest in the property based on its stipulated judgment in the case it filed against Burns. The court explained, Kahn, "Inc. sued NSI and the parties stipulated to entry of judgment in the amount of $1,856,000. See [*Anne Kahn, Inc. v. Burns*, Case No. 37-2021-0001811-CU-BC-NC]. Judge Cynthia Freeland, the trial judge in that case, denied [Kahn,] Inc.'s 7/1/22 motion for approval of the stipulated judgment, ruling in part: 'Plaintiff has

8

not provided the court with the information needed to assess the propriety of the requested relief.  More specifically, Plaintiff has not submitted the confidential settlement agreement for the court's consideration, and Plaintiff has not explained how the proposed settlement will impact or otherwise affect the Dissolution Proceeding and/or the Kirkeby Action, all of which would enable the court to assess the enforceability of the proposed settlement agreement in light of the other pending proceedings that all parties to this case repeatedly have referred to throughout these proceedings.' "

After the issuance of this order, on July 8, 2022, Kahn, Inc. filed a noticed motion for leave to file a cross-complaint in intervention, again asserting intervention was appropriate based on its leasehold agreement with NSI.  In their opposition to Kahn, Inc.'s motion, the Kirkebys asserted there was insufficient evidence to show the existence of a lease or that Kahn had invested any money into the property, and that the purported oral lease was merely an attempt to defraud them and the court.  The opposition also stated the Kirkebys were investigating whether the written lease submitted to the court by Kahn was fraudulent.  The Kirkebys explained they had issued a subpoena to LawDepot, which appeared in the document's footer, in order to determine when the document was created, and that Kahn had moved to quash the subpoena.

On July 29, 2022, the court denied Kahn, Inc.'s motion to intervene. The court found that there was no evidence to support Kahn, Inc.'s claim that it held a lease for the Circle R Property.  The court pointed to Burn's statements in a declaration submitted in his marital dissolution proceeding that Kahn "does not have authority to manage the hotel.  The hotel is owned by my business NSI.  NSI has the license to operate the hotel … so [Kahn]

9

does not have a license to operate the hotel."[6]  In addition, the court found the lease agreements, one purported to be dated April 3, 2019 and the other October 4, 2019, were fraudulent.  The court pointed to the subpoenaed testimony of the custodian of records for LawDepot, who stated the company's records made clear that the lease dated in April 2019 was created on May 1, 2022 by an account belonging to Burns four days before Kahn submitted her declaration to the court attaching the document and that the lease dated in October 2019 was created in 2021.

*E. Dismissal of Kahn and Dissolution Judgment*

On September 26, 2022, the Kirkebys and MHCD dismissed Kahn (individually) from the underlying proceedings without prejudice based on her lack of assets to satisfy a monetary judgment.  Two days later, on September 28, 2022, a judgment of dissolution was entered in the divorce proceedings between Kahn and Burns (*Burns v. Kahn*, Case No. 20FL010428N).  The judgment incorporated a marital settlement agreement (MSA), which included a document titled "Settlement Agreement" and another titled "Stipulated Addendum to Judgment of Dissolution of Marriage and Marital Settlement Agreement."

The Settlement Agreement, incorporated into the MSA, provided that title in the Camino and Circle R Properties would be transferred from the Crosby Clinic and NSI (which the document described as entities created and maintained by Burns) to Kahn free and clear of any interest of Burns, the Crosby Clinic, or NSI.  The document, however, stated the transfers are "[s]ubject to approval by the Court in related matters, including the Kirkeby

---

6      Kahn's declaration in support of the motion also acknowledged the Circle R Property had been purchased by NSI in December 2018, and that title had been solely in NSI's name.

10

Matter." Similarly, the "Stipulated Addendum" stated that the parties to the dissolution agreed that the Circle R and Camino Properties "shall be awarded to [Kahn] as her sole and separate property and the parties shall sign all documents necessary to transfer all two (2) properties to [Kahn]."[7]

On September 30, 2022, Burns, as manager of the Crosby Clinic, transferred title in the Camino Property to Kahn by quitclaim deed.

*F. Reversal of Default & Trial*

A minute order dated November 18, 2022 indicates the Kirkebys requested a scheduled default prove up hearing be vacated and instead that the case be set for trial on the issue of damages. On November 22, 2022, the court entered an order prepared by the Kirkebys stating that in lieu of the prove-up hearing, the matter was set for trial "on the issue of damages only" and modifying its May 2, 2022 order issuing terminating sanctions against Burns to be "changed to issue sanctions on the issue of liability, [and] that the matters alleged in [the FAC] remain deemed admitted as to Burns." The order further provided that "the defaults previously entered against Burns pursuant to the [May 2, 2022 order] be vacated, but that Burns be permitted to only present evidence at the upcoming trial on the issue of damages."

On January 5 and 30, 2023, the parties proceeded to a bench trial on the issue of damages for the claims asserted against Burns.[8] After the conclusion of the two-day damages trial, the court issued its final decision.

---

[7] The Stipulated Addendum contains a signature line for the court, but it is blank.

[8] In between the two trial dates, a stipulated judgment was entered by the court in Kahn, Inc.'s case against Burns, *Anne Kahn, Inc. v. Burns*, Case No. 37-2021-0001811-CU-BC-NC, awarding Kahn, Inc. damages of $1,500,560.31.

11

Therein, the court noted that Burns was previously found guilty of contempt and that his liability was "established by motions well prior to trial." The court found "the evidence regarding intentional transfer of assets, sometimes in direct contravention of existing court orders, [wa]s abundant" and awarded the Kirkebys "$3,037,216 in damages directly related to the intentional actions" of Burns and also awarded treble damages, for a total compensatory damage award of $9,111,648. The court denied the Kirkebys' claim for punitive damages, finding they had not established that Burns would have the ability to satisfy such a judgment. Finally, the court found the Kirkebys were entitled to an award of attorneys fees and could seek them in post-judgment proceedings.

The court entered judgment in favor of the Kirkebys on April 20, 2023. The judgment included the court's finding that "[p]rior to trial, the Court ordered issue sanctions against Burns and the Crosby Center Entities, inclusive of NSI and the Crosby Clinic, on the issue of liability and all matters alleged in the above referenced causes of action in the FAC were deemed admitted as to Burns and the Crosby Center Entities. This included admission of Paragraphs 25 through 28 of the FAC which alleged, among other things, that at all relevant times to these proceedings, Burns and the Crosby Center Entities, inclusive of NSI and the Crosby Clinic, were the alter egos of each other, and further, the alter egos of Burns as well as each other's

12

agent, servant, employee, assignee, successor-in-interest, co-conspirator and aider and abettor."[9]

On August 18, 2023, the Crosby Clinic, which was then managed by Kahn, filed a motion to vacate the judgment.[10]  Kahn argued (1) the superior court's November 22, 2022 order vacating an entry of default against Burns

---

[9]     The month before the judgement was entered, on March 16, 2023, Kahn filed an ex parte application to expunge the Camino Property stipulation. Kahn argued she was the owner of the property pursuant to the judgment in her marital dissolution proceeding, that she had been dismissed from this case in September 2022, and that the Camino Property stipulation was never signed by the Crosby Clinic, which had been dismissed as a defendant in December 2022.  (*Kirkeby v. Kahn, supra*, D082333.)  The court denied the application, but set the matter to be determined by noticed motion and calendared a hearing for May 5, 2023.  (*Ibid*.)  Then, on March 29, 2023, now aware of the transfer of the Camino Property, the Kirkebys filed a motion to compel compliance with the stipulated injunction, asserting Burns had again violated the injunction by transferring the Camino Property to Kahn via quitclaim deed on September 30, 2022 and that the transfer was an attempt to defraud them.  (*Ibid*.)  On April 11, 2023, Kahn filed her motion to expunge the stipulated injunction, repeating the arguments she made in her previous ex parte application.  (*Ibid*.)

After a hearing on May 5, 2023, the court granted the Kirkebys' motion to compel compliance with the stipulated injunction and denied Kahn's motion to expunge the order.  (*Kirkeby v. Kahn, supra*, D082333.)  The court's order detailed Burn's repeated violations of the injunction with respect to the Camino Property and rejected Kahn's argument that the stipulated injunction was void.  The court ordered her to reconvey title in the Camino Property to the Crosby Clinic pursuant to the injunction and the court's authority under section 128, subdivision (a)(4).  (*Kirkeby v. Kahn, supra,* D082333.)  Kahn appealed from the order, and this court affirmed.  (*Ibid*.)

[10]    A Statement of Information filed by Kahn with the Secretary of State indicated Kahn was the managing member of the Crosby Clinic.  The document was submitted by the Kirkebys in support of an ex parte application for an order to show cause why Kahn was not in violation of the stipulated orders preventing transfer of the Camino and Circle R Properties.

did not comply with section 473 and deprived Burns of due process and a fair hearing; (2) that the order exceeded the court's jurisdiction, was void, and should be vacated; and (3) the subsequent judgment was void and should be vacated for failing to comply with section 580, subdivision (b). The Kirkebys opposed the motion, contending the Crosby Clinic lacked standing to contest the judgment because it had not shown any injury, and that its corporate status as a separate entity should be disregarded because it had been adjudged the alter ego of Burns. The Kirkebys also asserted the damage award was against only Burns and thus the Crosby Clinic could show no injury.

After a hearing on the motion, on September 29, 2023, the trial court issued an order denying the motion. In its order, the court stated, "After careful consideration of the parties' arguments and authorities, the Court is unpersuaded the Kirkebys obtained the November 22, 2022, order, and subsequent April 20, 2023, judgment, through extrinsic fraud .... While the Court declines to address every argument raised, the Clinic's argument that Burns relied on entry of default as a tactical decision is belied by and decisively at odds with the record and history of this matter. As noted in the Kirkebys' opposition, Burns sought to have the subject defaults vacated, albeit unsuccessfully, participated in numerous motions, and ultimately participated in trial in January of 2023."[11]

On November 2, 2023, the Kirkebys filed a motion requesting that the court distribute the proceeds from the sale of the Circle R Property held in

---

[11] The Crosby Clinic, under Kahn's control, appealed the decision, and this court affirmed the trial court's order. We held that Crosby Clinic lacked standing to challenge the judgment against Burns and that the judgment had not awarded damages against the Crosby Clinic after default, only against Burns. (*Kirkeby v. The Crosby Clinic, LLC, supra*, D083640.)

the court's general fund to them in partial satisfaction of the judgment against Burns. The Kirkebys argued they were entitled to preference in the distribution of the funds because without their substantial effort and expenditure, the funds would not exist. Specifically, they asserted their efforts prevented loss of the Circle R Property through either foreclosure or Kahn's unlawful attempts to remove the property from the trial court's jurisdiction and frustrate the receivership. The Kirkebys further argued that Kahn's claim to the funds, based on the alleged existence of a commercial lease between Kahn, Inc. and NSI lacked evidentiary or legal support.

Kahn and Kahn, Inc. both filed competing motions seeking distribution of the funds. Kahn argued the funds were hers because the judgment of dissolution of her marriage to Burns declared her the owner of the Circle R Property. Kahn, Inc. argued it was entitled to the funds because NSI had granted it a leasehold interest in the property prior to the receivership, it had invested $1.8 million in the property in reliance on the leasehold, and it obtained a judgment of $1,500,506.31 in its case against Burns, *Anne Kahn, Inc. v. Burns*, Case No. 37-2021-0001811-CU-BC-NC.

After a hearing on the competing motions for distribution, on December 29, 2023, the court issued its order granting the Kirkebys' motion and denying the motions of Kahn and Kahn, Inc. The court emphasized that the judgment was based on its finding that the Circle R Property "was obtained by Burns through embezzled funds." The court stated that "Burns misled the Kirkebys by hiding his transfer and misappropriation of over $3,000,000 owed to, but never shared to the Kirkebys, to purchase the Circle R Way Property for Burns' own benefit."

The court also outlined the proceedings that led to its findings, including the stipulated order precluding the transfer of the property, which

prevented its imminent foreclosure; the subsequent receivership to maintain its value; and Kahn's "numerous efforts to gain control and ownership of the Circle R" Property, including the filing of a lis pendens in violation of the stipulated injunction order and Kahn, Inc.'s commencement of separate litigation. In addition, the court highlighted its finding in the judgment that Burns, NSI, and the Crosby Clinic "were all the alter egos of each other." The trial court found that because "the judgment in this matter include[d] an explicit finding that the Circle R Way Property was acquired by Burns through funds embezzled from the Kirkebys," it was "both a logical legal and equitable conclusion that the Surplus Funds should be distributed" to them.

With respect to Kahn's motion, the court recognized a strong presumption that property acquired during marriage is community property, but found Kahn had failed to explain how the judgment of dissolution could override the court's finding that Burns obtained the property through fraud. The court also rejected any suggestion that Kahn was defrauded by Burns, noting that "months prior to [their] separation, Kahn willingly assisted Burns in his attempts to prevent the sale of the Circle R Way Property in violation of court orders." With respect to Kahn, Inc. the court found its motion "void of any legal argument" that would alter the court's decision. The court also found the Kirkebys had a first in right priority lien to the Circle R Property based on the stipulated injunction order precluding the property's transfer and on their related lis pendens. Thus, the court concluded it was unnecessary to consider the subsequent stipulated judgment Kahn, Inc. obtained in its case against Burns. If it were to reach the issue, however, the court stated it would likely find the judgment fraudulent and noted that "[m]any of the arguments proffered by Kahn, Inc. … are inaccurate in the

16

description of historical events and ignore, and/or directly contradict, statements made by Kahn to the Court before current counsel's retention."[12]

Kahn and Kahn, Inc. jointly appealed from the court's order.

DISCUSSION

I

Kahn first argues that the court's order should be reversed because the judgment against Burns is void under sections 473, subdivision (d) and 580. The Crosby Clinic advanced a similar argument in its appeal from the court's denial of its motion to vacate the judgment under section 473, subdivision (d). (*Kirkeby v. The Crosby Clinic, LLC* (January 13, 2025, D083640 [nonpub. opn.].)  There, the Crosby Clinic argued that because the Kirkebys failed to plead a specific amount of damages in the FAC, the trial court lacked jurisdiction to enter the judgment awarding them damages.  Kahn now similarly asserts that because Burns's answer was stricken, section 580 precluded the trial court from awarding damages.

In the earlier appeal we concluded any damages awarded against the Crosby Clinic were precluded by section 580 because it suffered a default judgment and the FAC did not plead a specific amount of damages against it. This conclusion, however, did not require reversal because the judgment only awarded damages to the Kirkebys against *Burns*, not the Crosby Clinic, and Burns was not subjected to a default judgement.  Thus, the damages awarded

---

[12]    The court provided Kahn and Kahn, Inc. ten days to post an undertaking under section 917.2 to stay the order pending appeal.  On January 8, 2024, Kahn caused NSI to file a petition for bankruptcy, which resulted in an automatic stay in this case.  As a result, the Kirkebys filed a motion for relief, and on March 27, 2024, the bankruptcy court vacated the stay, finding Kahn filed the case "in bad faith to try and stay the state court's order and prevent the disbursement of the funds on deposit in the Superior Court's General Fund to the [Kirkebys]."

17

against Burns were not invalidated by the Kirkebys' failure to plead a specific amount of damages in the FAC.

A

As we explained in our prior opinion, section 425.10, subdivision (a) states that a complaint shall contain both a "statement of the facts constituting the cause of action, in ordinary and concise language" and a "demand for judgment for the relief to which the pleader claims to be entitled." Further, the statute provides that "[i]f the recovery of money or damages is demanded, the amount demanded shall be stated." (§ 425.10, subd. (a).)

Section 580, subdivision (a) is a corollary to section 425.10, subdivision (a). It states that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. The court may impose liability, regardless of whether the theory upon which liability is sought to be imposed involves legal or equitable principles." (§ 580, subd. (a).) Cases in which sanctions result in a default judgement are subject to the same limitation. (See *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1175 [§ 580 governs "the amount of damages available on a default judgment entered as a discovery sanction"].)

" '[T]he primary purpose of [section 580] is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them.' " (*Stein v. York* (2010) 181 Cal.App.4th 320, 325 (*Stein*).) "A defendant has the right to elect not to answer the complaint. [Citation.]

18

Although this may [be] a tactical move by [a] defendant, it is a permissible tactic. [A d]efendant, relying on the absence of a statement of damages in the complaint, [is] entitled to have default entered against him. Section 580 'ensure[s] that a defendant who declines to contest an action ... [is] not ... subject[ed] ... to open-ended liability' and operates as a limitation on the court's jurisdiction." (*Ibid*.)

Section 580 is strictly construed. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.) " 'The notice requirement of section 580 was designed to insure fundamental fairness. Surely, this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability.' " (*Stein, supra*, 181 Cal.App.4th at p. 325.) "If a default judgment awarded against a defendant exceeds the relief demanded in the complaint [citation], or is a different form of relief than that demanded in the complaint [citation], the defendant is 'effectively denied a fair hearing … [citations].' Thus, a default judgment in an amount greater than the amount demanded is void and subject to either direct or collateral attack." (*Id*. at p. 326.)

" 'We review de novo the trial court's determination that a default judgment is or is not void.' " (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018 (*Airs Aromatics*).)

B

Here, it is undisputed that the FAC did not contain a demand for a specific amount of damages. Rather, the Kirkebys prayed only for "compensatory damages in an amount to be determined at trial," as well as "exemplary damages" and "treble damages." Thus, as we held in *Kirkeby v. The Crosby Clinic, LLC, supra*, D083640, any award of damages in this case

19

as a result of a default judgment is subject to the limitation of section 580. The damages awarded against Burns, however, were not the result of a default judgment. Rather, the trial court vacated the default against Burns with respect to the Kirkebys' damages claim and the parties proceeded to a contested trial on the issue of damages. (See *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 624–625 [discovery sanctions that established liability, "simply deprived [the defendant] of the right to litigate the issue of liability," and defendant "was in no different position than any defendant who admits liability, but disputes damages; who answers the allegations concerning damages, but fails to answer the liability allegations; or who has suffered an adverse summary adjudication of the issue of liability. In none of those instances is there a default"].)

With respect to the court's authority to vacate the default, Kahn and Kahn, Inc. assert that "[b]ecause the trial court granted [the Kirkebys' request to vacate the judgment] without any authority, the order vacating the default is void for lack of jurisdiction." Kahn and Kahn, Inc., however, offer no explanation as to why the trial court lacked authority to vacate the default. In support of this assertion, they cite only *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 20. *Plaza*, however, has no relationship to the issues presented in this appeal. In *Plaza*, the Sixth District concluded that a stipulated judgment entered between a county board of supervisors and a property owner that determined the property's tax basis was void because the trial court that entered the judgment lacked subject matter jurisdiction over the dispute. (*Id*. at pp. 23–26.) No such jurisdictional defect exists in this case and appellants have provided no alternative grounds to support their claim that the trial court lacked authority to vacate the default judgment. (See *Shaw v. Los Angeles*

20

*Unified School District* (2023) 95 Cal.App.5th 740, 754 (*Shaw*) ["It is the parties' responsibility to support claims of error with meaningful argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); [citation.] When they do not furnish legal argument with citation to authority on a particular point, we may treat the point as forfeited and pass it without consideration."].)

Kahn and Kahn, Inc. next argue that even if the default was properly set aside, the judgment entered against Burns still violates section 580 because Burns's answer was never reinstated. Kahn and Kahn, Inc. argue this precluded Burns from contesting the merits, implicating section 580. The appellants, however, again provide no relevant legal support for their argument. (*Shaw, supra*, 95 Cal.App.5th at p. 754.) In addition, this argument was not raised by Kahn or Kahn, Inc. in the trial court, forfeiting it for purposes of appeal. (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 (*Hewlett-Packard*) [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; …. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." ' "].)

Even if we were to reach this argument, however, we would reject it on its merits. First, Kahn and Kahn, Inc's position does not accurately reflect the trial court proceedings. They suggest that because the court did not "reinstate" Burns's answer after vacating the default, it was not actually vacated and that Burns's due process rights were violated by the eventual judgment awarding damages against him. The court's order makes clear, however, that the court did vacate the default before it proceeded to a disputed trial on the merits of the Kirkebys' damage claims.

21

Further, to the extent that Kahn and Kahn, Inc. contend Burns was precluded from contesting the merits, such contention is contradicted by the record. As the Kirkebys point out, Burns actively participated in the damages trial and had an opportunity to present evidence and cross-examine the Kirkebys' witnesses. Burns thus had the opportunity to contest the merits of the Kirkebys' damage claims, and section 580's rule precluding default damages greater than the amount pleaded in the complaint was not implicated.[13]

---

13    Kahn and Kahn, Inc. rely on *Stein, supra*, 181 Cal.App.4th 320 and *Airs Aromatics, supra*, 23 Cal.App.5th 1013, to support their argument that the absence of an answer, and not the entry of default judgment, invokes section 580. In *Stein*, the plaintiff sued her lawyer, York, for malpractice. (*Stein, supra*, 181 Cal.App.4th at p. 323.) After engaging in some discovery, and an unsuccessful demurrer, York declined to answer the complaint and the plaintiff requested a default. (*Ibid*.) The court granted the request and a default was entered against York. The case proceeded to a default prove-up hearing, the court entered judgment in favor of plaintiff, and awarded damages of $2.65 million. (*Ibid*.) York then moved to modify the judgment because the damages exceeded the amount requested in the complaint, which was nothing. The trial court denied the motion and York appealed. (*Id*. at p. 324.) The Court of Appeal sided with York, holding that the damages were void under section 580. (*Id*. at p. 327.) Here, in contrast, the default *was* vacated and the parties proceeded to trial on the issue of damages. Accordingly, *York* does not support reversal.

*Airs Aromatics* likewise concerned a relatively straightforward application of section 580, where there was no question that the judgment entered *after* default exceeded the amount of damages pleaded in the complaint. The defendant argued that the motion to set aside the default judgment, which was filed several years after the default was entered, was untimely because the judgment was voidable, and not void. (*Airs Aromatics, supra*, 23 Cal.App.5th at p. 1021.) The court rejected the argument, concluded the judgment was void, and reversed the trial court's order denying the defendant's request to set aside the default. *Airs Aromatics* does not support reversal here.

II

Kahn and Kahn, Inc. next make a series of alternative arguments that they contend require reversal of the court's distribution order. They argue that the order should be reversed because (1) no judgment was entered against NSI, (2) there was no adequate finding of alter ego liability in the judgment, (3) the Kirkebys did not have a first-priority lien on the Circle R Property, and (4) Kahn has a community property interest in the property. These arguments are not well-taken.

A

Kahn and Kahn, Inc. assert that "[w]ithout any judgment against NSI Services, the Kirkebys have no right to the Surplus Funds." As an initial matter, because this argument was not raised in the trial court it is forfeited. (*Hewlett-Packard Co. v. Oracle Corp., supra*, 65 Cal.App.5th at p. 548.) This argument is also a red herring. As discussed, the funds at issue are the proceeds from the court-appointed receiver's sale of the Circle R Property. After the sale, the funds were placed into the court's general fund and held in reserve pending the outcome of the litigation. Through that litigation the court determined the Circle R Property was purchased by Burns, through NSI, with money that was fraudulently obtained from the Kirkebys. Indeed, this fact is not disputed by Kahn. After the damages were fixed by the results of the subsequent trial, the court awarded the proceeds of the sale of the property to the Kirkebys because the funds used to purchase the property

23

were stolen from the Kirkebys.  Put simply, the lack of judgment against NSI is not relevant.[14]

B

Kahn and Kahn, Inc. next argue that the trial court erred to the extent its decision to distribute the funds to the Kirkebys was based on a finding of alter ego.  "In order to prevail in a cause of action against individual defendants based upon disregard of the corporate form, the plaintiff must plead and prove such a unity of interest and ownership that the separate personalities of the corporation and the individuals do not exist, and that an inequity will result if the corporate entity is treated as the sole actor."  (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749.)  " 'Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.' [Citations.]  Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.  [Citations.]  No one characteristic governs, but the courts must

---

14    Kahn and Kahn, Inc. cite a statement from *Oksner v. Superior Court* (1964) 229 Cal.App.2d 672—"A judgment creditor is, of course, entitled to subject to his judgment only property which belongs to his debtor …."—in support of their argument.  *Oksner* is inapposite.  The case considered whether a security interest in real property owned by the judgment debtor prevented the transfer of the asset to satisfy a judgment.  (*Id.* at p. 681.)  The Court of Appeal held that the trial court erred by requiring the judgment debtor to surrender the trust deed to the property, which prevented a foreclosure sale by the lender.  (*Id.* at p. 686.)  Here, no one—including NSI— claimed any secured interest that was not satisfied at the time of the property sale.

24

look at all the circumstances to determine whether the doctrine should be applied." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538–539 (*Sonora Diamond*).)

If the corporate form, or here the LLC, is disregarded, then the court will hold the alter ego—in this case Burns—"liable for the actions of the [entity]: 'As the separate personality of the [entity] is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.' " (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).) Further, when the entity form "is abused it will be disregarded … *so that the [entity] will be liable for acts of the [members]* or the [members] liable for acts done in the name of the" entity. (*Ibid*., italics added; see also *id*. at p. 301 ["The law of this state is that the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons."]; *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 [" 'The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds.' "].)

Contrary to the assertion of Kahn and Kahn, Inc., the allegations in the FAC that were admitted by the court's imposition of sanctions against Burns sufficiently supported the court's finding in the subsequent judgment that NSI was Burns's alter ego, and vice versa. Specifically, the FAC alleged NSI was the alter ego of Burns and that Burns was the alter ego of NSI; Burns had *sole* control, management, and ownership of the entity; Burns diverted the assets of the entity for his personal use; the entity was a mere shell used to defraud the Kirkebys and MHCD; and the entity was a subterfuge for Burns fraudulent activity. These allegations, as admitted, sufficiently supported the trial court's finding that NSI and Burns were each other's alter

25

egos. (See *Sonora Diamond, supra*, 83 Cal.App.4th at p. 538 [the "alter ego doctrine will be invoked" when there is "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist" and there will "be an inequitable result if the acts in question are treated as those of the corporation alone"].) For this reason, the court's finding that the proceeds from the sale of the Circle R Property should be distributed to the Kirkebys was appropriate regardless of whether Burns used NSI to purchase the property.[15] (See *id*. p. 538 ["when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation"].)

We also reject Kahn and Kahn, Inc.'s argument that the aiding and abetting allegations in the FAC were inconsistent with the court's finding that NSI and Burns were alter egos. The appellants did not raise this argument in the trial court and thus have forfeited the argument for purposes of appeal. (See *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767 [failure to raise an issue in the trial court forfeits the

---

[15] Kahn and Kahn, Inc. argue the distribution to the Kirkebys constituted improper outside reverse corporate veil piercing. We disagree. The case appellants cite, *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, concerned a corporation, not a limited liability company with one member like NSI. (See *id*. at pp. 1512–1513 ["third party creditor may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability"].) Unlike *Postal*, there is no evidence in the record that NSI had other creditors competing for its assets. Further, the court's order approving the receivership sale required the receiver to eliminate any judgment liens on the property before transferring the remaining funds to the court's general fund.

claim of error on appeal].) In addition, Kahn and Kahn, Inc. provide no legal authority to support their assertion that the aiding and abetting allegations negate the alter ego findings. Accordingly, we disregard this "conclusory argument[] that [is] not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597.)

Even without these procedural grounds for rejecting Kahn's argument, the argument is also not persuasive. The fact that the Kirkebys alleged aiding and abetting liability against Burns and the various entities he controlled is not relevant to whether the proceeds from the sale of the Circle R Property were properly distributed to the Kirkebys in partial satisfaction of their judgment against Burns. Whether aiding and abetting liability is unavailable because the entity defendants were merely alter egos of Burns, and thus could not conspire with him, has no bearing on the issues before this court.

C

Kahn and Kahn, Inc. also assert that the court erred by finding that the Kirkebys had a first-in-right priority lien on the Circle R Property based on their recording of the stipulated injunction order on March 1, 2021 because after the sale of the property the trial court ordered it to be transferred free and clear of any liens and encumbrances. As with other arguments made by the appellants, however, they provide no legal authority to support this bald assertion. Accordingly, we have no basis to reverse the trial court's order on this ground. (See *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 [" 'This court is not inclined to act as counsel for … appellant and furnish a legal argument as to how the trial court's rulings in this regard constituted an abuse of discretion' [citation], or a mistake of law."].)

## D

Kahn and Kahn, Inc.'s final argument, again with no citation to any legal authority, is that the trial court erred by disregarding Kahn's community property interest in the Circle R Property. As discussed, the trial court found that the marital settlement agreement awarding the property to Kahn did not prevent the court from finding the property was fraudulently obtained by Burns. While the Kirkebys do not address this issue in their briefing, we do not find Kahn's argument concerning her community property interest persuasive.

First, the record establishes NSI purchased the property just four days prior to the marriage, and that the property was purchased solely by NSI. In addition, the MSA that purportedly awarded the property to Kahn was entered *after* the Circle R Property was placed in receivership. Further, the MSA itself stated the transfer of the property from NSI to Kahn was "[s]ubject to approval by the Court in related matters," including this case. It is undisputed that Burns and Kahn never received the trial court's approval for a transfer of the property. In sum, Kahn and Kahn, Inc. have failed to show that the trial court erred by finding that the Circle R Property was obtained by Burns using funds embezzled from the Kirkebys and that Kahn did not have a valid interest in the property.

28

## DISPOSITION

The order is affirmed.  Respondents are awarded the costs of appeal.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


CASTILLO, J.